AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Charles Ray Easterling and his wife, Mary Ann Easterling; et. al. <br> *Plaintiff* <br> v. <br> National Footbal Leage, Inc. <br> *Defendant* | ) ) ) ) ) ) ) )  Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Paul Taglia
National Football League
280 Park Avenue
New York, NY  10017

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Larry Coben, Esq.
Anapol Schwartz Weiss Cohan Feldman & Smalley, P.C.
1710 Spruce St.
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____08/17/2011_____          _____
                                          *Signature of Clerk or Deputy Clerk*

%JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CHARLES RAY EASTERLING and his wife, MARY ANN EASTERLING; WAYNE RADLOFF and his wife, GARLAND ☐+

**DEFENDANTS**

National Football League, Inc.

**(b)** County of Residence of First Listed Plaintiff   Richmond County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     (U.S. Government Not a Party)

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
     Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     another district
     (specify)

☐ 6  Multidistrict
     Litigation

☐ 7  Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
28 U.S.C. 1332

Brief description of cause:
Other Personal Injury

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE  8/17/11

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Charles Ray Easterling and his wife, Mary Ann et.al  v. | : : : : | CIVIL ACTION |
| National Football League, Inc. | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 8/17/11 | _____ | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215)735-1130 | 480-515-4744 | Lcoben@anapolschwartz.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___5 Sharpless Lane, Media, PA 19063___

Address of Defendant: ___280 Park Ave., New York, NY10017___

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?     Yes ☐   No ☑

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☑

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☑ All other Diversity Cases
(Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: ___8/17/11___   _____   ___17523___
                        Attorney-at-Law              Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   _____
                        Attorney-at-Law              Attorney I.D.#

CIV. 609 (6/08)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES RAY EASTERLING and his wife, MARY ANN EASTERLING; WAYNE RADLOFF and his wife, GARLAND RADLOFF; JAMES McMAHON; JOSEPH E. THOMAS and his wife, NICOLE THOMAS; GERALD FEEHERY; STEVE KINER and his wife CAROL KINER, and MICHAEL FURREY and his wife, KOREN FURREY, in their individual capacity and on behalf of all others similarly situated.<br><br>**PLAINTIFFS,**<br><br>V.<br><br>NATIONAL FOOTBALL LEAGUE, INC.<br><br>**DEFENDANT.** | **CIVIL ACTION NO.**<br><br>**COMPLAINT**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

The Plaintiffs, Charles Ray Easterling, Mary Ann Easterling, Wayne Radloff, Garland Radloff, James McMahon, Joseph E. Thomas, Nicole Thomas, Gerald Feehery, Steve Kiner, Carol Kiner, Michael Furrey and Koren Furrey, individually and on behalf of all others similarly situated, sue the Defendant National Football League, Inc (referred to herein as NFL) and state as follows:

## NATURE OF THE ACTION

1.     This is an action seeking medical monitoring, compensation and financial recovery for the long-term/chronic injuries, financial losses, expenses and intangible losses suffered by the Plaintiffs as a result of the defendant's carelessness, negligence, intentional misconduct, and concealment of information directly related to each Plaintiffs' injuries and losses.  This action also seeks to recover fair compensation for the spouses of the player plaintiffs based upon their right to seek loss of consortium.

2.     For more than 35 years, and until the August 4, 2011 Collective Bargaining Agreement with the NFL Players Association was signed, the defendant and its designated representatives have continuously and vehemently denied that it knew, should have known or believed that there is any relationship between NFL players suffering concussions while playing, the NFL policies regarding tackling methodology or the NFL policies about return to play and long-term problems such as headaches, dizziness, dementia and/or Alzheimer's disease that many retired players have experienced.  Those denials have been stated in NFL publications, NFL sponsored so-called medical studies, testimony of NFL representatives before Congress and in the media in response to other reports suggesting a causal connection.

3.     In the early 1970s, the NFL became aware of publications accounting for the rate and seriousness of concussion in the sport of football.  At the same time, the NFL became aware of the publication of a helmet standard, known as the NOCSAE for football helmets, and which was intended to improve upon the safety of helmets and minimize the risk of head injury.  The NFL in the 1970s learned that the NCAA and National High School Football Federations (NHSFF) had adopted a policy requiring by the beginning of the 1978 season that all helmets used in their

respective organizations must be approved for sale and comply with the NOCSAE standard. The NFL did not make or adopt a similar policy at that time.

4.    Rule makers in the NCAA and the NHSFF in the early 1970s recognized that the helmet-face mask combination was contributing to the use of the helmeted-head as an offensive weapon, which in turn was increasing the rate of concussions. In 1976, these organizations initiated changes which prohibited initial contact of the head in blocking and tackling. While the NFL was aware of these changes in the rules and this risk of harm, it failed to take similar action.

5.    In 1979, the NFL promulgated a rule, with an associated (albeit inadequate) penalty, for players who are found to have used their helmets to butt, spear or ram an opponent with the crown or top of the helmet. This undertaking by the NFL, based upon the duty of care it owed the NFL players, fell far short of the important safety and injury prevention action that should have been taken. This rule adopted by the NFL came several years after a similar rule was adopted by the NCAA and the NHSFF; this rule related to a recognized risk of spinal cord injury in football. This rule ignored the more prevalent practices in the NFL that was directly causing a substantial and high rate of concussions amongst NFL players.

6.    During the 1970s, 1980s and 1990s, players in the NFL were being coached, trained and motivated to use all portions of their helmets to block, tackle, butt, spear, ram and/or injure opposing players by hitting with their helmeted heads. These techniques were condoned by the NFL and/or not significantly condemned by the NFL, despite the defendant's awareness that this practice was causing an increased risk in concussions among players. Further, even after the NFL approved a rule change in1989 to provide referees with the authority to eject a player who is observed using his helmet in this fashion, the NFL did not insist on the strict enforcement of

this rule because of the defendant's interest in keeping its fan base excited over the visual excitement generated by such techniques.

7.     Despite its awareness of the aforementioned dangerous practices and increased risk of head injury to the players, during the 1970s, 1980s, 1990s and 2000s, the NFL turned a blind eye to the players being coached, trained and/or motivated to use all portions of their helmet to block, tackle, butt, spear, ram and/or injure opposing players by hitting with their helmeted heads— because of the defendant's interest in keeping its fan base excited and interested in the violence of this sport.  And, in fact, when in 1996 the NFL undertook to promulgate a rule making it a personal foul with potential associated fines to hit with the helmet, its purpose was not to protect the player using the helmet but rather to protect quarterbacks.  Thus, evidencing a complete disregard for the risk of harm and safety of players who have been condoned for using this tackling technique.

8.     Since the early 1970s, the high incidence of concussion among NFL players has been well known to the defendant.  Further, the defendant has been well aware—from its supervisory and management role, and studies it paid for as set forth more particularly in paragraph 11—that a history of multiple concussions has been associated with players' greater risk of future brain deficits.

9.     Since the early 1970s, the defendant has known or it has had reason to know, from its supervisory and management role, that NFL players suffering repeated concussions were more likely to experience evolving symptoms of post-traumatic brain injury including headaches, dizziness, loss of memory, etc.  Despite this knowledge, until August 4, 2011, the defendant has continued to deny any connection or correlation between players suffering concussions and long-term chronic brain injury or illness.  Further, the defendant has taken an active role in concealing

4

or actively disputing any causative connection between concussions in football in the NFL and brain injury/illness.

10.     During the decades of the 1970s, 1980s, 1990s and 2000s, while the NFL was well aware from its supervisory and management role that NFL players suffering repeated concussions were more likely to experience evolving symptoms of post-traumatic brain injury including headaches, dizziness, loss of memory, impulse control problems, Chronic Traumatic Encephalopathy, dementia, Alzheimer's disease, etc., the defendant failed to act reasonably by developing appropriate means to identify at risk players and guidelines or rules regarding return-to-play criteria.  The defendant's breach of duty in this respect increased the risk of long term injury and illness as referenced above.

11.     On September 30, 2009, as a part of its continuing active role in disputing and covering-up the causative role of repeated concussions suffered by NFL players and long-term mental health disabilities and illnesses, the defendant disputed the results of a scientific study that it funded.  On the aforementioned date, newspaper accounts were published detailing (an unreleased) a study commissioned by the NFL to assess the health and well-being of retired players, which found that the players had reported being diagnosed with dementia and other memory-related diseases at a rate significantly higher than that of the general population. Despite the findings of this study, showing that 6.1 percent of retired NFL players age 50 and above reported being diagnosed with dementia, Alzheimer's disease and other memory related illnesses, compared to a 1.2 percent for all comparably aged U.S. men, the defendant's agents disputed these findings and continued the mantra in the Press that there is no evidence connecting concussions, concussion like symptoms, NFL football and long-term brain illness or injury, including but not limited to Chronic Traumatic Encephalopathy (CTE), dementia, etc.

12.    As a result of the September 30, 2009 newspaper accounts, the plaintiffs and others similarly situated were first alerted to or made aware that the conduct and/or misconduct of the defendant NFL may have caused their chronic brain injury symptoms, including but not limited to Chronic Traumatic Encephalopathy (CTE), dementia and/or Alzheimer's disease from which they suffer.

13.    Until September 30, 2009, the Plaintiffs and all those who are members of the Class Plaintiffs to this cause of action, did not have a reasonable basis to know or believe that the aforementioned harm was caused by the concealment, neglect and/or misconduct of the defendant.

14.    Between the early 1970s and September 30, 2009, the NFL ignored the repeated warnings and patterns of injury only it was privy to in its management capacity (and which it concealed) of the devastating effects that on the field concussions and the defendant's return to play policies have had in causing chronic mental defects and illnesses to the plaintiffs and others similarly situated.

15.    The defendant has, over the past four decades actively concealed and actively disputed any correlation between on the field concussions, its return to play policies and the chronic mental illnesses and maladies suffered by former players, including the plaintiffs and all others similarly situated.  During the decades of the 1990s and 2000s, the defendant through its authorized agents disputed and actively sought to suppress the findings of others that there is a connection between on-field head injury and post career mental illness.

16.    Despite its knowledge of the grave risks players in the NFL have been exposed to because of the defendant's concerted inaction or concealment of safety information, the

defendant carelessly failed to take reasonable steps to develop appropriate and necessary guidelines to recognize, diagnose and treat players with concussions.

17.     Despite its knowledge of the grave risks players in the NFL have been exposed to because of the defendant's concerted inaction or concealment of safety information, the defendant careless failed to take reasonable steps to develop appropriate and necessary guidelines for return to play following a concussion.  These omissions either caused or increased the risk that the plaintiffs and others similarly situated would suffer repeated concussions and long-term injury, illness and/or disability.

18.     The defendant's continuing relationship with the plaintiffs and all others whom they represent were accompanied by a scheme to conceal information and facts it knew regarding the risks of long-term disabilities associated with players suffering concussion, the inappropriate time to return to play and other errors set forth herein.

19.     The defendant failed to establish a proper and adequate methodology to monitor and detect when players suffer concussive or sub-concussive injury in practice or game play.  This failure increased the risk of injury that has materialized (referenced above) or will materialize in the future.

20.     The defendant is liable to Plaintiffs and all other similarly situated Plaintiffs for medical monitoring as a result of the defendant's negligence, carelessness, concealment and other misconduct.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and other pertinent federal statutes.  This is an action for violation of the common law of

the Commonwealth of Pennsylvania and of the other states of the United States related to acts of negligence, fraud, and concealment in the inducement, etc.

22.     The amount in controversy is greater than the minimum dollar value required by law.

23.     Venue is proper in this district pursuant to 28 U.S. C. § 1301(a)(2) and 1391(b)(2) as a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this jurisdiction and the defendant conducts substantial business in this jurisdiction.

## PARTIES

24.     Plaintiffs, Charles Ray Easterling and his wife Mary Ann Easterling, are individuals residing at 3420 Traylor Drive, Richmond, VA 23235.  Mr. Easterling played in the NFL during the mid-1970s and into the early 1980s.

25.     Plaintiffs, Wayne Radloff and his wife Garland Radloff, are individuals residing at 106 Wedgefield Drive, Hilton Head Island, SC.  Mr. Radloff played in the NFL from approximately 1985 through part of 1991.

26.     Plaintiff, James McMahon, is an individual residing at 22431 North Violetta Drive, Scottsdale, AZ 85255.  Mr. McMahon played in the NFL during the years 1982 through 1996.

27.     Plaintiff, Gerald Feehery, is an individual residing at 5 Sharpless Lane, Media, PA.  Mr. Feehery played in the NFL from 1983 to 1990.

28.     Plaintiff, Joseph E. Thomas and his wife, Nicole Thomas, are individuals who reside at 13433 Greenwood Avenue North, Seattle, WA.  Mr. Thomas has played in the NFL from 2007 – 2010.

29.     Plaintiff, Michael Thomas Furrey, currently reside at 528 N. Boulevard, Huntington, WV.  Mr. Furrey has played in the NFL from approximately 2003 through 2010.

30.     Plaintiffs, Steve Kiner and his wife, Carol Kiner, currently reside in Atlanta, Georgia.

Mr. Kiner played in the NFL from 1970 through 1978.

31.     Defendant, National Football League, Inc. is a business entity with its principal offices at

280 Park Avenue, New York, NY 10017.

## CLASS ACTION ALLEGATIONS

32.     This action seeks the establishment of a medical monitoring class, money damages and

any appropriate declaratory relief for the Defendant's wrongdoing under the laws of the

Commonwealth of Pennsylvania and the common law of other relevant states.  Plaintiffs and the

Class seek compensatory damages for each class member for the Defendant's wrongful conduct

as alleged herein.

33.     Certification under Rule 23(b)(3) Fed. R. Civ. P. is proper.

34.     Plaintiffs seek certification of a nationwide class against the named Defendant

fornegligence and other wrongful conduct alleged in this Complaint.  The Plaintiffs class

consists of the following:

> *"All former NFL players who sustained a concussion(s) or suffered concussion*
>
> *like symptoms while in the NFL league, and who have, since leaving the NFL, developed*
>
> *chronic headaches, chronic dizziness or dementia or Alzheimer's disease and/or other*
>
> *physical and mental problems as a result of the concussion(s) suffered while a player."*

The class is further defined into the following sub-classes:

Sub-class A.   All former NFL players who were employed for and worked for
a team member of the NFL during the time period 1970 through
1980, and sustained a concussion or a concussion like symptom
while playing, and who now suffer from one or more of the
chronic symptoms referenced above.

Sub-class B.   All former NFL players who were employed for and worked for

a team member of the NFL during the time period 1981 through 1989, and sustained a concussion or a concussion like symptom while playing, and who now suffer from one or more of the chronic symptoms referenced above.

Sub-class C.   All former NFL players who were employed for and worked for a team member of the NFL during the time period 1990 through 1999, and sustained a concussion or a concussion like symptom while playing, and who now suffer from one or more of the chronic symptoms referenced above.

Sub-class D.   All former NFL players who were employed for and worked for a team member of the NFL during the time period 2000 through 2010, and sustained a concussion or a concussion like symptom while playing, and who now suffer from one or more of the chronic symptoms referenced above.

Sub-class E.   All current NFL players who have in the past and/or will in the future experience a concussion and/or a concussion like symptom while playing or practicing and who, until now, have not been properly monitored, assessed, evaluated or otherwise examined to insure that any transitory or permanent injury is properly recognized, diagnosed and treated before allowing return to play.

35.   The Class is further defined as follows:

The person does not have pending against the Defendant, on the date of the Court's certification order, any individual action or grievance proceeding wherein the recovery sought is based in whole or in part on the type of claims asserted herein, and who has not accepted the Article 65 Neuro-cognitive Disability Benefit in the August 4, 2011 CBA, or has previously obtained a judgment or entered into a settlement of claims concerning the same type of losses asserted herein.

36.   Rule 23(a) and Rule 23(b), Fed. R. Civ. P. requirements are met because:

a. Plaintiffs estimate that the proposed class consists of not less than several thousand members throughout the United States, and joinder of all members in this action is impracticable.

b. There are questions of law and fact common to the class.

c. The common questions predominate over any questions affecting only individual members.

d. The named Plaintiffs are adequate representatives of the class and sub-classes. The claims of the Plaintiffs as class representative are typical of those of the class members in that they were subjected to the same unlawful treatment, and the named Plaintiffs suffered the same type harm as suffered by other members of the class. The class representatives will vigorously pursue the claims on behalf of the class, and will fairly and adequately protect the interests of the class. Plaintiffs' counsel is experienced and professionally able to properly represent the class.

e. The claims of the representative party are typical of the claims of each member of the class, and are based on or arise out of similar facts constituting the wrongful conduct of the Defendant.

f. A class action is far superior to any other available method for the fair and efficient adjudication of this controversy.

37.    Prerequisites to a Class Action – Fed. R. Civ. P. 23(a).  The prerequisites to maintaining this action as a Class action are satisfied in this case as alleged below.

a. Numerosity – On information and belief, there are several thousand former NFL players who have suffered multiple concussions while playing and who were harmed by the same misconduct described above, and who have developed or will

in the foreseeable future develop chronic symptoms as described above. All of these former players have suffered because of the same misconduct by the defendant.  Although the exact number of such persons is unknown to the Plaintiff at this time, Defendant's records should contain information on the identities and location of all such parties.  Because Defendant has exclusive control of such information, the Plaintiffs reserve the right to amend their allegations following completion of discovery.  Given the scope of the Defendant's business, it is clear that the members of the Class are so numerous that joinder is impracticable and the disposition of their claims in a Class action will provide substantial benefits to the parties and the Court.

b.  Commonality – Since the Plaintiffs and other members of the Class all played in the NFL under the same inadequate rules and practices, and the same woefully inadequate return to play policies, and they all suffered multiple concussions and returned to play under flawed policy standards set by the defendant which in turn led to their chronic problems as set forth above, there are questions of law and fact common to the Class. Such common questions of law and fact predominate over any individual questions affecting Class members.

c.  Typicality – Named Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class. The named plaintiffs' claims are typical of the claims of all class members because:  the claims originate from the same practices on the part of the defendant and its acts in furtherance thereof and the named plaintiffs.

d.  Adequacy of Representation – Plaintiffs' claims are aligned with the interests of the absent members of the Class such that the Class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of Class litigation. Plaintiff will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class. Plaintiffs' interests are antagonistic to the interests of the Defendant and Plaintiff will vigorously pursue the claims of the Class.

e.  Class Actions Maintainable – Fed. R. Civ. P. 23(b)(3). Class action status is also appropriate because the common question of law and fact identified above predominate over questions affecting only individual members. A Class action is superior to other available methods for the fair and efficient adjudication of this litigation. It is desirable to concentrate the litigation of the claims in this District. Plaintiffs and their counsel do not anticipate encountering any unique difficulties in the management of this action as a Class action.

## COUNT I
## CONCEALMENT

38.  Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

39.  The Defendant concealed facts and information which caused all plaintiffs to become exposed to the harm referenced above.

40.     As a proximate cause of the concealment of the defendant, each player plaintiff was caused to suffer harm described above and each has suffered damages that are continuing in nature and as yet have not been fully ascertained.

41.     Wherefore, the Plaintiffs individually and in their representative capacities hereby demand compensatory damages from the defendant in an amount to be determined at trial, plus interest and costs.

## COUNT II
## CIVIL CONSPIRACY

42.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

43.     The Defendant actively and deliberately conspired with its team members and/or independent contractors who were directed to continuously discount and reject the causal connection between multiple concussions suffered while playing in the NFL, a non-scientific return-to-play policy for players suffering concussions and the chronic long term effects of these injuries.

44.     This conduct between the defendant and others was a proximate cause of the chronic injuries and damages suffered by the Plaintiffs and the class members.

45.     Wherefore, the Plaintiffs hereby demand compensatory damages from the Defendant in an amount to be determined at trial, plus interest and costs.

## COUNT III
## NEGLIGENCE

46.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this      Complaint as if fully set forth herein.

47.     The Defendant assumed a duty toward the Plaintiffs and the members of the Class to supervise, regulate, monitor and provide reasonable and appropriate rules to minimize the risk of injury to the players.

48.     The Defendant acted carelessly and negligently in its position as the regulatory body for all the team members and the plaintiffs and the class members.  The defendant knew or should have known that its actions or its inaction in light of the rate and extent of concussions reported in the NFL would cause harm to players in both short and long term.

49.     The Defendant was generally careless and negligent by breaching the duty of due care it assumed for the benefit of the Plaintiffs and the class members, both generally and in the following particular respects:

    a.   Failing to warn of the risk of unreasonable harm resulting from repeated concussions;

    b.   Failing to disclose the special risks of long term complications from repeated concussions and return to play;

    c.   Failing to disclose the role that repeated concussions has in causing chronic life-long cognitive decline;

    d.   Failing to promulgate rules and regulations to adequately address the dangers of repeated concussions and a return to play policy to minimize long-term chronic cognitive problems;

    e.   Misrepresenting pertinent facts that players needed to be aware of to make determinations of the safety of return to play;

    f.   Concealing pertinent facts;

    g.   Failing to adopt rules and reasonably enforce those rules to minimize the risk of players suffering debilitating concussions; and,

h.   Other acts of negligence or carelessness that may materialize during the pendency of this action.

## COUNT IV
## DAMAGES - NFL PLAYERS

50.   Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

51.   The Plaintiffs individually and the Class members have each sustained past medical expenses and will in all likelihood incur future medically related costs associated with the harm suffered and injuries and disability referenced above.

52.   The Plaintiffs individually and the class members have suffered a loss of earnings and may in the future suffer a loss of earnings capacity associated with the harm suffered and the injuries and disability referenced above.

53.   The Plaintiffs individually and the class members have in the past experienced, and they may in the future suffer from an assortment of problems associated with the harm and injuries described including, but not limited to, headaches, dizziness, loss of memory, depression, impulsivity to anger, cognitive dysfunction, employment impairment, limitations in physical activities, embarrassment, loss of the pleasures of life, etc.

54.   As a result of the foregoing, the Plaintiffs and the Class member players have suffered damages and will in the future suffer damages caused by the misconduct of the Defendant.  The Plaintiffs and the proposed Class members are entitled to damages in an amount to be determined at trial.

## DAMAGES—NFL SPOUSES

55.   Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

56.     The Plaintiffs and the Class members who are the spouses of former NFL players who are Class members have suffered in the past and they will in the future suffer damages as a direct result of the harm and injuries described above.

57.     Pursuant to the common law, the Plaintiff-Spouses seek to recover for the past and future loss of consortium and other harm to their relationship and marriage with their husband-players.

## COUNT V
## MEDICAL MONITORING

58.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

59.     The class has been exposed to a greater risk of concussions and sub-concussions, which then have an increased risk of suffering long-term injury and illnesses as described above.

60.     The class who have not yet begun to evidence the long-term physical and mental effects of the defendant's misconduct require specialized testing that is not generally given to the public at large for the early detection of the long-term effects of concussions and sub-concussions.

61.     The available monitoring procedures/regime is specific for individuals exposed to concussions and multiple sub-concussions which are different from that normally recommended in the absence of exposure to this risk of harm.

62.     The available monitoring procedures/regime is reasonably necessary according to contemporary scientific principles within the medical community that specializes in close head injuries and their connection to memory loss, early onset dementia, CTE and Alzheimer like syndromes.

63.     Pursuant to Rule 23(b)(1), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, the Plaintiffs seek certification of a medical monitoring national class in this matter, consisting of:

> *"All retired NFL players and current NFL players who have during their career, to their knowledge, suffered a concussion or concussion like symptoms", but not as of the date of the filing of this lawsuit developed or experienced any of the long-term problems identified above; and,*

> *"All current and future NFL players who from the date this lawsuit is filed and into the future suffer a concussion or concussion like symptoms."*

64.     By monitoring and testing former and current NFL players who are suspected to have suffered or who will in the future suffer a concussion or sub-concussion while playing or practicing, it can be determined whether each such player is sufficiently healthy to return to play and/or it will significantly reduce the risk of each such player suffering long term injuries, disease and losses as described above.

65.     Because until now the defendant has failed to properly, reasonably and safely monitor, test or otherwise study whether and when a player has suffered a concussion or sub-concussion to minimize the risk of long-term injury or illness, medical monitoring is the most appropriate method by which it can be determined whether a particular individual is now at risk for long-term injury or illness from a concussion or sub-concussive event.

66.     Accordingly, the defendant should be required to establish a medical monitoring program that includes, *inter alia*:

   a.   Establishing  trust fund, in an amount to be determined, to pay for the medical monitoring of all past, current and future NFL players, as frequently and appropriately as necessary;

   b.   Notifying all Plaintiff class members in writing, in addition to notices to each Team member of the NFL and health care providers, that these former and current players require frequent medical monitoring;

    c. Providing information to treating team physicians, other physicians and Team members to aid them in detecting concussion or sub-concussions to assist them in determining when the player is subjected to an increased risk of harm.

67.    Plaintiffs and Plaintiffs' class members have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk of long-term physical and economic losses due to concussions and sub-concussive injuries. Without a Court approved medical monitoring program as described herein, or established by the Court, the Plaintiffs and the Plaintiffs' class members will continue to face an unreasonable risk of injury and disability.

### **PRAYER FOR RELIEF**

68.    WHEREFORE, the Plaintiffs individually and on behalf of the proposed Class, pray for judgment as follows:

    A. Certification of the proposed Class pursuant to Federal Rules of Civil Procedure Rule 23(a), (b)(2) and (b)(3);

    B. Designation of Plaintiffs as representative of the proposed Class and designation of Plaintiffs' counsel as Class counsel;

    C. An award of compensatory damages, the amount of which is to be determined at trial;

    D. An award to the Plaintiffs and Class prejudgment interest, costs and attorneys fees;

    E. An award to the Plaintiffs and Class of such other and further relief as the Court deems just and proper.

### **JURY DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs hereby demand a trial by jury.

Signed this 17th day of August, 2011.

Larry E. Coben, Esquire,
Attorney I.D. No. 17523
Sol Weiss, Esquire
Attorney I.D. No. 15925
Anapol, Schwartz, PC
Attorneys for the Plaintiffs

20

## VERIFICATION

James McMahon, hereby states that he is a Plaintiff in the within action and verifies that the statements made in the foregoing Plaintiffs' Class Action Complaint are true and correct to the best of his knowledge, information and belief. He understands that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: _8-15-11_

_____
James McMahon